## MAYER STERNBERGER *et al. v.* OWEN McGOVERN.

Plaintiffs agreed to sell to defendant certain land which defendant agreed to buy at a certain price, to be paid by his assuming the payment of certain mortgages on the property and by conveying to plaintiffs certain other land belonging to him; *Held*, that this was not a sale of land but an exchange.

Defendant was unable to carry out his agreement on account of the refusal of his wife to sign a deed releasing her dower, although he endeavored in good faith to induce her to do so. Plaintiffs were aware of these facts, and not having parted with possession of the land they had agreed to sell, nor delivered a deed thereof, they brought an action to enforce a lien for the purchase money, and asked to have the property sold and the proceeds applied to the payment of the purchase money, and for a personal judgment against the defendant for the balance; *Held*,

1. That not having parted with possession of the property, they could not maintain an action to enforce a vendor's lien for the price.

2. That as the defendant's inability to perform was set forth in the complaint, it showed that there was no ground for equitable jurisdiction; that the complaint should be dismissed, and the plaintiffs left to bring an action for damages for the breach of the contract.

Appeal by defendant from a judgment entered on the decision of a judge at special term. The facts are as follows:

The plaintiffs being the owners of certain real estate in Thompson street, New York city, entered into a written agreement, March 16th, 1872, with the defendant for the sale of said premises to him for the sum of $125,000, payable as follows : $20,000 thereof by defendant's assuming mortgages to that amount as existing liens thereon ; $64,500, by a deed from the defendant and wife to the plaintiffs for a piece of land at Mott Haven (thereinafter in said agreement more particularly described), and the balance, $40,500, by a purchase-money mortgage on the premises in Thompson street. In the same instrument defendant agreed to sell and convey, and plaintiffs agreed to purchase, the said property at Mott Haven, for the sum of $82,500, subject to a mortgage of $18,000, which plaintiffs were to assume. Defendant's wife refused to join in the execution of the deed of the Mott Haven property. Plaintiffs attended at the time and place fixed, prepared to close the sale. The defendant failed to comply with the terms of the contract for the reason above stated.

Plaintiffs then brought this suit against the defendant, claiming a lien on the Thompson street property for the purchase money, and asked that same be sold in satisfaction thereof. The cause was tried on the issues raised by the pleadings, and judgment rendered that plaintiffs recover of and defendant pay the amount of said purchase moneys, and in default thereof that said premises be sold and proceeds applied to such payment, and that defendant be charged with any deficiency arising from said sale, &c. From the judgment thus rendered this appeal was taken.

*A. A. Redfield* and *T. C. T. Buckley* for appellant.

I. The judge erred in his construction of the contract.

The transaction was a barter or trade, and plaintiffs' obliga-

tion to take the Mott Haven property on the terms mentioned in the contract is quite as much an integral part of the contract as defendant's undertaking in reference to the Thompson street estate.

There is no option or election in the case. Defendant could, under no circumstances, have escaped from his obligation to convey the Mott Haven property by offering to pay the consideration.

There is, by the terms of the agreement, *no definite money indebtedness created*, dischargeable at the *election* of defendant in an alternative mode of payment, and, therefore, the rule that on failure to avail of the alternative, the money is to be the measure of recovery, does not apply.

This view is the basis on which the decisions relied on by plaintiffs' counsel proceeds. (See *Pinney* v. *Gleason*, 5 Wend. 399; *Kimpton* v. *Bronson*, 45 Barb. 629; *Murray* v. *Harrison*, 47 Id. 493.)

II. The agreements, *being mutual and dependent*, and the defendant, as found and adjudged by the court, not being obliged to convey the Mott Haven property, it is clear that specific performance should not be enforced of the other part, and an equitable lien declared to exist.

1. Want of mutuality is always a ground for refusing specific performance (Willard's Eq. Jurisp. p. 267, and cases cited; *Ogden* v. *Fassick*, 9 Jurist, N. S. 288; *Peto* v. *Brighton R. R.* 1 Hern. & Miller, 468, 480, 481–483; Story Eq. Jur. § 736).

2. The contract price is not recoverable or enforceable by way of lien or otherwise, where specific performance would be refused (*Clark* v. *Hall*, 7 Paige, 385; *Congregation Beth Elohim* v. *Presb. Church*, 10 Abb. Pr. N. S. 484).

III. This is not a case in which the plaintiffs are entitled to a lien for unpaid purchase money of the Thompson street property.

The plaintiffs' agreement to take in payment for that property a conveyance of other premises, and a purchase-money mortgage, was a waiver of the security of any vendor's lien.

1. There can be no lien except where the purchase money is payable in cash, as that term is understood in the law (*Hoyt*

v. *Van Alstyne*, 15 Barb. 568. See also 11 N. Y. Leg. Obs. p. 258).

2. At all events, so far as the portion of the contract price represented by the Mott Haven property is concerned, there can be no lien.

That is within the exception to the doctrine recognized by the cases cited on the oral argument (*McKillip* v. *McKillip*, 8 Barb. 552, 558; *Coit* v. *Fougera*, 36 Barb. 195; *Hare* v. *Van Deusen*, 32 Barb. 95 and 100; *Arlin* v. *Brown*, 44 N. H. 102; *Chapman* v. *Beardsley*, 31 Conn. 115).

3. It is clear that the plaintiffs have now no better claim for a lien than they would have in case the defendant had, in fact, taken their deed of the Thompson street property, and had failed to convey in exchange the Mott Haven property, and to execute the purchase-money mortgage as agreed.

But the authorities are uniform that a vendor who takes, or agrees to take, in payment, instead of cash, chattels, or securities, such as a mortgage on other land, or a mortgage even on the land sold, will be deemed to have waived the security of his vendor's lien (*Fish* v. *Howland*, 1 Paige, 20, 30; *Coit* v. *Fougera*, 36 Barb. 195; *Selby* v. *Stanley*, 4 Min. 65; *Baum* v. *Grigsby*, 21 Cal. 172; *Camden* v. *Vail*, 23 Id. 633; *Mattix* v. *Wells*, 18 Ind. 151).

The case is even stronger when, as in this case, the vendor agrees to take, not a conditional conveyance (as a mortgage), but an absolute conveyance of other property.

*John G. Vose* and *Everett P. Wheeler*, for respondents.

I. The plaintiffs have a lien upon the Thompson street property until they are paid for it. This lien " is wholly independent of any possession on their part, and it attaches to the estate as a trust equally, whether it be actually conveyed or only contracted to be conveyed."

In other words, as is sometimes said : The vendor is trustee of the land for the vendee's benefit, and the vendee is trustee of the purchase money for the vendor's benefit.

The general rule is undoubted, and the burden is upon

the defendant of showing exemption from it.    This he has not done (*Garson* v. *Green*, 1 Johnson Ch. 308).

Exemption from the rule is claimed:

1. Because the contract to sell is still executory, and the plaintiff still has title and possession.    At common law, a party always had a lien upon an article sold, whether real or personal, until he parted with the possession of it (2 Story Eq. § 1216).

The doubt arose whether equity would give a lien where the vendor had parted with the possession, and it was held that such a lien existed, although the vendor retained the title (2 Story Eq. § 1217; *Champion* v. *Brown*, 6 Johns. Ch. 398).

In equity the vendee is the owner, and his interest descends to his heirs (*Champion* v. *Brown*, *ubi supra*; *Havens* v. *Patterson*, 43 N. Y. 218, 221).

2. Because the purchase money was to be paid in land. The reply to this is twofold.    The objection is not well taken in point of fact.    $40,500 of the purchase money was to be paid by the vendee's bond and mortgage on the land sold. Nor is it valid in law.    It overlooks the fact that this land has not, and cannot be conveyed.    It overlooks the fact that the bond and mortgage have not been given.    All that the vendor now has is the vendee's personal obligation to pay the purchase money, and it is perfectly well settled that this does not discharge the lien (2 Story Eq. § 1226; Sugden on Vendors and Purchasers, ch. 19, §§ 13, 15; pp. 675, 676, 14 Eng. ed.; *Winter* v. *Lord Anson*, 3 Russell, 488; *Garson* v. *Green*, 1 Johns. Ch. 308; *Manly* v. *Slason*, 21 Vermont, 271).

II. Should the court, however, be of opinion that the plaintiffs have no lien in this case, they are entitled to judgment for the unpaid purchase money.

The cases cited by the defendant hold, that where the plaintiff neither avers nor proves facts sufficient to entitle him to a judgment at law, the judge cannot refer the case to enable the plaintiff to prove and recover damages.    They hold that the legal remedy in such case is not within the scope of the case made by the complaint.    But the Court of Appeals held unanimously, in *Bradley* v. *Aldrich* (4 N. Y. 504), that the

plaintiff might, by proper averments in his complaint, unite the legal and equitable causes of action. There can be no question that they have done so here. The complaint states all the facts necessary to substantiate an action at law, and demands a personal judgment.

In such a case, even if the defendant had demanded a jury trial, and this had been improperly denied, he is not entitled to dismiss the complaint, but only to have the case sent to a jury to be tried (*Stevenson* v. *Buxton*, 37 Barb. 13; *Genet* v. *Howland*, 45 Barb. 573).

III. The cases cited by the appellant, on the subject of mutuality, all arose upon contracts, an essential part of which was in its nature incapable of specific performance under the direction of the court, *e. g.* an agreement to render certain personal services, as in *Ogden* v. *Fossick* (9 Jurist, N. S. 288). But the law is well settled, that in other cases the want of mutuality is no defense to an action for specific performance.

1. Where, owing to the partial failure of title on the vendor's part, he is unable entirely to perform the contract, he cannot compel performance by the vendee, but the vendee may, at his election, compel the vendor to convey that portion of the land to which a good title can be made, with an abatement from the price for the part not conveyed (Story Eq. §§ 778, 779; *Harsha* v. *Reid*, 45 New York, 415; *Vorhees* v. *De Meyer*, 2 Barb. 37).

2. The vendee can compel the performance of a contract to convey land, executed by the vendor, but not by the vendee, for the reason, among others, that the filing of the bill gives sufficient mutuality, so that after such filing the vendor could compel performance by the vendee (Story Eq. § 736 a; *Worrell* v. *Munn*, 5 New York, 229, 246; *White* v. *Schuyler*, 1 Abb. Pr. N. S. 300; *McCrea* v. *Purmort*, 16 Wend. 460).

So that, although, if it were conceded for the sake of the argument, that the defendant could not have compelled a conveyance of the Thompson street property after the neglect on his part to accept the deed when duly tendered, yet he is now entitled to a conveyance of it upon complying with the judgment.

Indeed, this adjudges him to be in equity the owner of that property. And ever since the commencement of this action, he has had a right to a deed of that property upon paying the purchase money.

3. So an agreement to convey land or do any other act will be enforced, though there is no corresponding agreement on the part of the vendee to buy the land. In such cases the vendee or covenantee has his option whether to comply with the terms or not; but if he does comply with them, he can compel a conveyance (*In the Matter of Hunter*, 1 Edward's Ch. 1; *Lobdell* v. *Lobdell*, 36 New York, 327; *Sands* v. *Crooke*, 47 N. Y. 564).

By THE COURT.*—LARREMORE, J.—It is material in the decision of this case that the true construction of the contract between the parties should first be determined. It should be interpreted in that sense in which the parties understood it at the time of its execution (*Barlow* v. *Scott*, 24 N. Y. 40, and cases there cited).

Did the parties then intend to make an exchange of their respective pieces of land, or was the sale of each an independent transaction?

If there had been no reference in the terms of sale of the one to the other piece of property, there would be little doubt that each sale was entire and independent, although the conditions of each were contained in one instrument (*Johnson* v. *Johnson*, 3 Bosanquet & Puller, 162; *Mayfield* v. *Wadeley*, 3 Barn. & Cress. 357; *Croome* v. *Lediard*, 2 Mylne & Keene, 251).

The price of the Thompson street property is stated at $125,000, part payment of which, to wit, $64,500, the plaintiffs agreed to receive by a deed from defendant and his wife *of a piece of land at Mott Haven in said contract thereinafter more particularly described.* Here is found a direct reference in plaintiffs' agreement to that of the defendant, and from the nature thereof and the property which was the subject of it, it is apparent that the covenants and conditions therein contained

---

* Present, DALY, Ch. J., LARREMORE, and J. F. DALY, JJ.

were mutual and dependent (Fry on Spec. Perf. § 540, p. 170 ; *Ogden* v. *Fossick*, Ct. of Appeals in Chancery, 9 Jurist, N. S. part 1, p. 288).

In the case last mentioned the owner of a coal wharf agreed to let it, and at the same time agreed to act as the agent of the tenant in the coal business, and not to act for any other person, and it was held that the agreements were inseparable, and specific performance, was refused of the agreement to let, because the Court could not decree performance of the other.

Under the contract in question the parties were entitled to a delivery of the thing *in specie*, and not its money valuation, which was intended as a mode of computation in adjusting the amount due on settlement between them. Any other construction of the contract would defeat its obvious intention.

Suppose the Thompson street property had appreciated in value pending the execution of the contract and the time fixed for the delivery of the deed, would the plaintiffs' obligation to convey have been discharged by the payment of the sum named as the consideration thereof? Would they have been allowed to claim the prospective increase which in equity belonged to the defendant?

Could the defendant have fulfilled his part of the agreement by refusing a deed and paying $64,500?

What satisfactory means are there of "determining what represents the money value of a specified estate to a specified individual?"

Having reached the conclusion that the contract was for the exchange of property between the parties, let us next inquire to what extent their relations under it were changed, by defendant's inability to perform.

It appears from the findings of fact that such inability resulted from the refusal of defendant's wife to join in the deed of the Mott Haven property, although he in good faith endeavored to induce her to do so, and that no damages were claimed or proved as ensuing therefrom. Neither is there any imputation of fraud or collusion on the part of the defendant. As the court could not enforce the execution of said deed by defendant's wife, it would not decree specific performance of the con-

tract in question and order performance of an impossibility (Fry on Spec. Perf. §§ 665 and 666, pp. 201, 202).

If the agreement were for the purchase and sale of the Mott Haven property only, the refusal of defendant's wife to join in the deed would bar plaintiffs' of their right to maintain specific performance, and leave them to their action at law for damages upon the covenant (*In re* Jane Hunter, 1 Edw. Ch. 1).

Shall they now be allowed to claim the benefit of a unilateral right to enforce a contract of exchange, containing mutual covenants and conditions, where the same objection exists to its performance ?

The subject of the contract is land, for the sale and conveyance of which it specifically provides. Such a contract is clearly distinguishable from those in *Pinney* v. *Gleason* (5 Wend. 393); *Kimpton* v. *Bronson* (45 Barb. 629); *Murray* v. *Harrison* (47 Barb. 493); and *Fletcher* v. *Derickson* (3 Bosw. 181), where a definite money indebtedness was created with an option to the debtor to discharge the same in an alternative mode of payment.

This action was brought to enforce the plaintiffs' lien as vendors upon the Thompson street property, for the purchase money thereof. They have never parted with its possession, nor received any payment on account of the purchase.

"This lien," says Judge Story, "is wholly independent of any possession on the part of the vendor, and it attaches to the estate as a trust equally, whether it be actually conveyed or only be contracted to be conveyed" (2 Story Eq. Juris. § 1218).

No transfer of the property by the vendor destroys the lien. The principle upon which it is sustained is that of an implied trust, as where the vendor delivers possession of an estate, without receiving the purchase money (Sugden on Vendors and Purchasers, chap. 19, §§ 1 and 2, pp. 670 and 671, 14 Eng. ed.)

None of the authorities recognize the right to the lien where the vendor has not parted with the possession, or received part payment of the purchase money (4 Kent's Com. sec. 58, p. 169; *Burgess* v. *Wheate*, 1 Eden, 211; *Mackreth* v. *Symmons*, 15

Ves. 329, 337; *Garson* v. *Green*, 1 John. Ch. 308 ; *Hughes* v. *Kearny*, 1 Sch. & Lef. 132 ; *Champion* v. *Brown*, 6 John. Ch. 402; *Bayley* v. *Greenleaf*, 7 Wheat. 40 ; *Daniels* v. *Davidson*, 16 Ves. 249 ; *Austen* v. *Halsey*, 6 Ves. 483 ; *McLean* v. *McLellan*, 10 Peters, 625, 640 ; *Ludlow* v. *Grayall*, 11 Price, 58 ; *Finch* v. *Earl Winchelsea*, 1 Peere Wms. Ch. 278 ; *Smith* v. *Hubbard*, 2 Dick. 730; *Fish* v. *Howland*, 1 Paige, 20 ; *Warner* v. *Van Alstyne*, 3 Paige, 513; *Shirley* v. *Congress Sugar Ref'ry*, 2 Edw. Ch. 505 ; *Bradley* v. *Bosley*, 1 Barb. Ch. 125 ; *Clark* v. *Hall*, 7 Paige, 382).

That the vendor has surrendered possession of the premises, either by deed, or under contract of sale, or upon part payment of the purchase money, cannot affect his right to the lien, which rests upon the equitable principle, " that a person who has gotten the estate of another, ought not in conscience, as between them, to be allowed to keep it, and not to pay the full consideration money " (2 Story's Eq. Juris. §§ 1219).

In *Burgess* v. *Wheate* (*supra*), the Master of the Rolls, in discussing the doctrine of equitable liens, says, " as to the vendor's keeping both the estate and the money, it is analogous to what equity does in another case, as when a conveyance is made prematurely before the money is paid, the money is considered a lien on that estate in the hands of the vendee. So, where the money was paid prematurely, the money would be considered as a lien on the estate in the hands of the vendor."

It would thus appear that the plaintiffs, who are still in full possession of their property (and to which defendant cannot now, on account of his default, make any claim), have not a lien thereon for the purchase money. They have parted with nothing and received nothing ; and their only remedy, under the circumstances of the case, is an action at law for damages for a breach of the contract.

If the conclusion at which I have previously arrived be correct, that the contract in question is an entirety, and the covenants thereof mutual and dependent, this action must fail. The plaintiffs not being entitled to a specific performance of the contract, cannot maintain their lien for the purchase money,

especially while in actual possession of the property itself, and without having received any payment thereon. The same objection necessarily applies to the proposition that the decree be modified and made a judgment for the amount of the purchase money.

I think the decree should be reversed, and the complaint dismissed without costs.

Daly, Ch. J.—I concur in Judge Larremore's opinion. The defendant's inability to perform was known at the time of the commencement of the suit; the fact that he apprised the plaintiffs of his wife's refusal to unite in the conveyance is set forth in the complaint; and this being the case, the plaintiffs' only remedy was an action at law for the recovery of damages for the breach of the agreement. He does not claim, in his complaint, to recover damages; and if he had, the court could not, in this action, have afforded him that relief, as no equitable jurisdiction whatever existed when the suit was brought. See the authorities and reasons stated in the case of Beck v. Allison, decided at the present term. There is, as Judge Larremore has remarked, no imputation of fraud or collusion on the part of the defendant; but, on the contrary, the judge has found that he endeavored, in good faith, to induce his wife to unite with him in the conveyance. The evidence shows that not only the defendant, but the plaintiffs also, at the defendant's request, tried to persuade her to sign the deed, but she would not; and that the defendant was willing throughout, if the plaintiffs would accept it, to sign the deed himself. Under these circumstances, the defendant's demand, in his answer, for judgment dismissing the complaint, should have been granted.

Judgment reversed.