JOHN S. PERRY, Respondent, *v.* THE BOARD OF MISSIONS OF THE PROTESTANT EPISCOPAL CHURCH IN THE DIOCESE OF ALBANY, Appellant.

The Diocesan Convention of the Protestant Episcopal church of the Diocese of Albany appointed a committee to take steps for procuring a residence for the bishop of the diocese. Plaintiff, under the advice of the bishop, and with the consent of the committee, purchased certain premises for the purpose specified; and at the request of the bishop commenced making necessary repairs and improvements. At the annual meeting of the convention in 1870 the committee made a report stating the fact as to the purchase, and referring to the repairs and improvements, which was adopted, and a resolution passed directing a transfer of the title to the property to defendant, to be held and used as a residence for the bishop, and authorizing and directing defendant to execute a bond and mortgage thereon to secure the payment of a prior mortgage, and "of the sum advanced for the repairs and fitting up of the same for the Episcopal residence." Defendant, by its charter, is authorized to take and hold property used for diocesan purposes, and is made "subject to the directions and instructions which shall be given to it by the said convention." (Chap. 13, Laws of 1870.) At the time of the passage of the resolution the work of repair was in progress, but only a small portion thereof had been paid for. Plaintiff went on and completed the work, advancing the money to pay for the same. The premises were conveyed to defendant as directed, and at a regular meeting of the board a resolution was passed accepting the conveyance, and directed the execution of a bond and mortgage for a sum specified, to be applied to the payment of the prior mortgage, and the expenses of the repairs and improvements. This was done, and the moneys realized thereon were applied as directed, but were insufficient to pay the whole amount so advanced by the plaintiff. *Held,* that plaintiff was entitled to a lien in the nature of a mortgage upon the premises for the balance, both because of the special agreement embodied in the resolution of the convention, and under the general doctrine of equity, which gives a right equivalent to a lien, when the rights of parties cannot be otherwise secured ; that the said resolution was not limited to the sums already advanced, but included as well all subsequent advances for the purposes specified; also that in an action to have an equitable lien declared, a judgment directing a sale of the property, as in case of a mortgage foreclosure, was proper.

Also *held,* the fact that defendant's relation to the property was that of trustee did not affect plaintiff's right to the relief sought; that to subject the premises to the cost of the repairs, through which alone the purposes of the trust were accomplished, would be no violation of the conditions upon which the premises are held.

(Argued March 1, 1886; decided April 13, 1886.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, entered upon an order made February 4, 1884, which affirmed a judgment in favor of plaintiff, entered upon the report of a referee.

This action was brought to have a lien declared in the nature of a mortgage upon certain premises, the title to which is in the defendant, for moneys advanced by plaintiff to pay for repairs and improvements upon said premises.

The material facts are stated in the opinion.

*E. Countryman* for appellant. Even if plaintiff had furnished the money to make the purchase of the property it would not entitle him to an equitable lien. (*Marquat* v. *Marquat*, 7 How. 417, 418; *Stansell* v. *Roberts*, 13 Ohio, 149, 157; *Crause* v. *Caldwell*, 14 Ill. 468; *Jeneson* v. *Gordon*, 29 id. 199; *Nolte's Appeal*, 45 Penn. St. 361, 363, 365; *Woodridge* v. *Scott*, 69 Mo. 669; *Lea* v. *Fabri*, 13 J. & S. 361.) The doctrine of equitable lien upon land should not be extended beyond the vendor and vendee and privies in estate or law, and then only for the unpaid purchase-money. (*McKillip* v. *McKillip*, 8 Barb. 522, 557–559, 560; *Taylor* v. *Baldwin*, 10 id. 626, 635.) The doctrine of compensation or lien only applies to the possessors of property who have in good faith made valuable improvements thereon under a claim of title which turned out to be defective, or under some mistake concerning their rights, or who were induced to incur such expenditures by deception of the real owners, which were subsequently attempting to dispossess them, and thus obtain the benefits thereof. (*Putnam* v. *Richie*, 6 Paige, 391, 402–406; *Taylor* v. *Baldwin*, 10 Barb. 626, 631–635; *Hassard* v. *Rowe*, 11 id. 22; *Wilson* v. *Wilson*, 13 id. 252; *McMulkin* v. *Bates*, 46 How. 405; *Mickles* v. *Dillaye*, 17 N. Y. 80, 87, 88; *Schmidt* v. *Schmidt*, 16 J. & S. 520.) The trustee could not invest the fund in a bishops' house in connection with other funds of his own, advanced by him for that purpose, and perfect the title under such a trust; and at the same time reserve the right to himself to destroy the trust and misapply the original trust fund for his own protection or to enable him

to reclaim the money thus advanced by him whenever he elected to do so. (1 Perry on Trusts, §§ 268, 274, 383*a*, 401 ; *Diefendorf* v. *Spraker*, 10 N. Y. 249, 250 ; *Thatcher* v. *Candee*, 4 Abb. Ct. of App. Dec. 387 ; *Brennan* v. *Wilson*, 41 N. Y. 502, 506 ; *Story* v. *El. R. Co.*, 90 id. 124, 157.) The courts have no power to destroy or impair a valid trust, nor to authorize the fund to be alienated or diverted from its proper purpose. (*Douglas* v. *Cruger*, 80 N. Y. 15 ; *Lent* v. *Howard*, 89 id. 171, 181 ; *Harvard College* v. *Soc., etc.*, 3 Gray, 280, 301.) An act of the legislature would be equally inefficient to accomplish such a result. (*Stone* v. *Framington*, 109 Mass. 303 ; *Shulenberg* v. *Harrison*, 21 Wall. 59, 64 ; *Swan* v. *Lindsay*, 70 Ala. 507, 521.) When the title to the property was finally perfected in the defendant as permanent trustee, it became liable to the same rules and restrictions. It cannot voluntarily violate the trust, nor permit the plaintiff to do so, nor can the court authorize such a violation of duty. (*Darke* v. *Williamson*, 25 Beav. 622 ; *French* v. *Griswold College*, 60 Iowa, 482.)

*Hamilton Harris* for respondent. An equitable lien may be created by any writing or agreement from which the intention to create it may be shown. (*Seymour* v. *C. & F. R. R. Co.*, 25 Barb. 284, 302 ; *In re Howe*, 1 Paige, 125, 130 ; *Chase* v. *Peck*, 21 N. Y. 581 ; *Paine* v. *Wilson*, 74 id. 348, 351.) Plaintiff is entitled to a lien upon the property for the balance due him for his expenses in repairing and fitting it up as a residence, and equity should decree him such lien. (*Brown* v. *Brown*, 1 Barb. Ch. 217.) A court of equity will enforce an equitable lien, either upon a legal or equitable estate in lands, and the usual way of enforcing a lien in equity is by a sale of the property to which it is attached. (*Price* v. *Palmer*, 23 Hun, 507.) The debt of the plaintiff for his advances being a just debt against the trust estate, with no personal covenant for the payment of the same, which can be enforced in law, and there being no way in which the plaintiff can be indemnified, except by a lien upon the property, equity will declare such lien. (*Fowler* v. *Mut. L. Ins. Co.*, 28 Hun, 195 ; Story's Eq. Jur., § 1237.)

DANFORTH, J. Upon trial before a referee the plaintiff has been declared entitled to a lien in the nature of a mortgage upon certain premises on Elk street, in the city of Albany, for a balance due him for advances made for improvements and repairs thereon and for interest on an existing mortgage, amounting to the sum of $4,677.38, besides costs, and in case the same is not paid within a certain time, that said real estate be sold in the same manner as sales are made upon mortgage foreclosure, and, of the proceeds of such sale, the plaintiff be paid the amount of said lien, with interest as aforesaid, together with his costs and disbursements. Upon appeal to the General Term the judgment upon this report was affirmed.

Some objections were made by the defendant to the admission of certain testimony, but it is not now contended that the facts found by the referee are not warranted by the evidence, or that they were not within the issues raised by the pleadings. The contention is against the referee's conclusion of law. It appears by his report that in September, 1869, the Right Reverend William Croswell Doane was bishop of Albany, and at that time by the action of the convention of the Protestant Episcopal church in that diocese a committee was appointed to take such steps as they might deem expedient for procuring a residence for the bishop; that in February, 1870, the vestry of St. Peter's church, in that city, appointed a committee, of which the plaintiff was chairman, to solicit subscriptions for the above purpose, and in that character he received moneys from various persons, in all to the amount of $12,825, and in June, 1870, under the advice of the bishop, and with the consent of the diocesan committee, he bought the premises above referred to at the price of $18,000 (of which $5,000 was in a then existing mortgage). He paid the residue, and upon like consent caused the property to be conveyed, subject to the mortgage, to a corporation called "The Trustees of the Episcopal Fund of the Diocese of Albany;" that thereupon "plaintiff, at the request of the bishop, commenced making various improvements, alterations and repairs in the dwelling upon the premises so purchased, all of which were necessary and proper to make it a suitable and convenient residence for him, and the plaintiff ad-

vanced the moneys required to pay the bills for such improvements and repairs; that at the annual meeting of the diocesan convention, in September, 1870, the diocesan committee made a report which stated the manner in which the title was taken, described the property and referred to the repairs and improvements. This report was, on motion, accepted." And at the same time the convention, with the consent of the trustees of the Episcopal fund, directed them to transfer the title to said property to the defendant herein, " to be held and used for the support of the Episcopate, and be a place of residence for the bishop of the diocese, and that the said board of missions be authorized and directed to make a bond and mortgage on the premises to secure the payment of the incumbrance thereon, of $5,000, and also the payment of the sum advanced for the repairs and fitting up of the same for the Episcopal residence," intending thereby to provide for and cover all the expenditures incurred by plaintiff for the improvements and repairs then in progress, and contemplated and included, as well the sums thereafter advanced as those which had then been actually paid.

The defendant is a corporation having power, among other things, to take and hold property used or intended to be used for " diocesan institutions, or purposes in the said diocese," and is subject to the directions and instructions which shall be given to it by the said convention. (Laws of 1870, chap. 13.)

At this time the repairs and improvements were in progress, and only the sum of $173.92 had then been advanced by plaintiff in payment therefor. On the 20th of October, 1870, in accordance with the above directions, the trustees of the Episcopal fund of the diocese of Albany conveyed the premises to defendant in trust as a residence for the bishop of Albany, and on the same day, at a regular meeting of the board, the following resolution was passed:

"*Resolved*, That this board do, in accordance with the direction of the convention, hereby accept the conveyance of the said premises, to be held in trust for the uses and purposes above mentioned, and further that the president of this board, the Rt. Rev. William Croswell Doane, S. T. D., Bishop of Albany,

be and is hereby in its name and behalf to execute and affix the corporate seal of this board to a bond and mortgage upon the said premises for a loan not to exceed $8,500, with interest, the proceeds of which shall be applied to the payment of the said existing mortgage of $5,000 thereon, and the said expenses of the said repairs and improvements," and in pursuance of said resolution on December 30, 1870, defendant, by its president aforesaid, executed and delivered to one Earl L. Stimson a bond with a mortgage upon the premises aforesaid for the sum of $8,500, which sum was loaned and advanced to it by said Stimson, and was by it paid over to plaintiff, who paid out of the same the mortgage of $5,000, and the interest thereon, then unpaid, amounting in all to the sum of $5,220.47, and the same was canceled of record, and the balance of said sum was credited and applied by plaintiff in his account for the advances made by him as aforesaid toward the purchase-price of said premises, the expenses incident to the same, and for said improvements and repairs.

Other facts are found which require no special mention, but which show that the amount for which a lien was declared was justly due for advances made under the circumstances above stated.

It is objected by the appellant that the plaintiff is not, by reason of any of these facts, entitled to an equitable lien upon the premises for the benefit of which they were made. We are of a different opinion.

The principle upon which a court holds that a vendor who has not been paid is entitled to a lien on the land sold is that it would be contrary to natural justice to allow a purchaser to retain an estate which he has not paid for, and it seems very clear that there is a like natural equity in favor of the plaintiff. It is true he did not sell the estate, but he added to it, and by his expenditures upon it fitted it for the purpose for which it was intended. A lien for the price of an estate sold exists without any special agreement and by virtue of a doctrine merely of a court of equity. Here there is a special agreement and also a case to which the doctrine applies:

*First.* The special agreement. It may be found in the resolution of the convention of 1870, by which the defendant was required in substance to provide by bond and mortgage "for the payment of the sum advanced for the repairs and fitting up of the Episcopal residence" — the one in question. The learned counsel for the appellant seeks to limit this expression by the rules of grammar, and confine the security to the sum then or already advanced, to the exclusion of all advances subsequent thereto. We do not think, however, that the framers of the resolution selected the word for the purpose of marking either present or future time, but to denote a fact which might include various transactions requiring the expenditure of money by some person other than themselves, the whole, by whomsoever or whenever made, constituting "the sum advanced," in rendering the place fit and suitable as a residence for the bishop of the diocese. The resolution in question was in writing; it was entered in the journal of the convention, and the defendant was bound to conform to it. (Chap. 13, Laws of 1870, *supra.*)

*Second.* The plaintiff's case is within the general doctrine of equity, which gives a right equivalent to a lien, when in no other way the rights of parties can be secured. The advances were directly for the benefit of the real estate; they were approved by the convention by whose directions the title was conveyed to the defendant, but neither the convention nor the defendant have incurred any corporate liability, and while it may be said that the advances were made on the promise of, or in the just and natural expectation that, a mortgage would be given, it is also true that they were made on the credit of the property, for the improvement of which they were expended. The repairs and improvements were permanently beneficial to it, made in good faith, with the knowledge and approbation of the parties interested, and accepted by them, not as a gratuity, but as services for which compensation should be given. The plaintiff's right to remuneration is clear, and unless the remedy sought for in this action is given, there will be a total failure of justice.

It would seem to follow that no error was committed by the referee in directing a sale of the property, and the application of the proceeds to the payment of the plaintiff's claim. But the learned counsel for the appellant argues that as the defendant's relation to the property is that of trustee, such enforcement of the lien would destroy the trust, and so defeat the very object of the conveyance through which they derive title. The trust was for the habitation and use of the bishop of the diocese; it was accepted with notice that the improvements were necessary to fit the buildings for occupation, and had been begun under proper authority. It was the duty of the defendant to allow them to be finished, and it will be no violation of the conditions upon which the premises are held, to subject them to a charge for the cost of the repairs through which alone the purposes of the trust were accomplished. If the building should now be burned, it might with the same force be urged that the mechanic who might repair or reconstruct it could acquire no lien, because enforcing it might diminish or even absorb the property. A statutory lien would be no better than the plaintiff's lien in equity.

The usual course of enforcing an equitable lien is by a sale of the property to which it is attached, and we find nothing in this case to take it out of the general rule. The appellant's remaining point is a sweeping one relating to various items of evidence of the bishop's declarations, letters and acts in connection with the purchase and repairs of the house. Under the circumstances disclosed in the record, they were properly received, either as acts of agency, or part of the transaction.

We think the decision of the referee was warranted by the facts before him, and that the judgment appealed from should be affirmed.

All concur.

Judgment affirmed.