## THE ADVANCE.

## THE ALLIANCA.

## THE VIGILANCIA.

## THE SEGURANCIA.

(Circuit Court of. Appeals, Second Circuit. March 3, 1896.)

SHIPPING—EQUITABLE LIEN—EXPRESS CONTRACT.

One who, in the home port, at the request of the owner, and for the purpose of preventing seizure and sale of the vessels in a foreign port, guaranties letters of credit, upon an express contract which gives him a lien on the freight alone, does not thereby acquire an equitable lien, superior to a prior mortgage, on the vessels themselves, even if he supposed at the time that he would have a maritime lien on both freight and vessels.

Appeal from the District Court of the United States for the Southern District of New York.

This was a petition by Collis P. Huntington and Pratt & Co. to assert an equitable lien against the proceeds of the steamships Advance, Allianca, Vigilancia, and Segurancia. The district court dismissed the petition, and the petitioners appeal.

Robt. D. Benedict and Maxwell Evarts, for appellants.

Lewis Cass Ledyard and Walter F. Taylor, for appellees.

Before WALLACE, LACOMBE, and SHIPMAN, Circuit Judges.

SHIPMAN, Circuit Judge. After the district court dismissed the petitions of C. P. Huntington and Pratt & Co., which were founded upon an alleged maritime lien upon the proceeds of the Advance, Allianca, and Vigilancia (see 63 Fed. 726, affirmed in 72 Fed. 793), the same petitioners filed in the district court a petition which, relying upon the same facts as those previously set forth, asserted that they constituted an equitable lien upon the proceeds of the same three vessels, and of the Segurancia, another steamer of the same line, and prayed that such equitable lien might be preferred in order of payment to the lien of the mortgagee. From the decree of the district court, which dismissed the petition, this appeal was taken.

The district court referred the petition to a commissioner, to take proof of the allegations which it contained, and the record shows that

no new facts were either proved or were found to be true. Mr. Babbidge testified again, but it is apparent that his memory of the previous transactions had not been modified. The facts upon which this petition must rest are therefore the same as those which were stated in the opinion of this court in the maritime lien cases. 72 Fed. 793. The position which the petitioners take is that they furnished the guaranties at the request of the owner of the steamships, to save them from being sold in a foreign port; that, by means of the aid thus furnished, a great benefit was conferred upon the vessels and upon their owner; that it would be inequitable to allow the owner to reap the benefit from payments which were made by the petitioners upon the supposition that they had a maritime lien upon the vessels, and thus compel them to endure a large loss; and that the mortgagee, who did not take possession of the ships, has no superior equity to that of the owner. The petitioners seek to bring their case within some of the circumstances which courts of equity have declared create equitable liens upon property, real or personal. For example, a vendor who has not been paid his purchase money for the land sold is entitled, as between himself and the purchaser, to a vendor's lien upon the land. A person who has advanced money for the benefit of an estate, upon the credit of the property, and upon the promise and the expectation of a mortgage thereon, is entitled to an equitable lien upon the estate, as between himself and the owner. Perry v. Board, 102 N. Y. 99, 6 N. E. 116. An assignee of a claim, holding it under an assignment supposed to be good, but afterwards adjudged to be invalid, who successfully prosecutes the claim, and protects and preserves it at his own expense from rival claimants, is entitled to a reimbursement of his expenses by the true owner, upon a settlement between them. A court of equity will compel the owner of land who comes into that court to obtain relief against a bona fide purchaser, under a title which has a latent defect, to make reasonable compensation for the improvements which the purchaser has made without notice of an adverse claim. Williams v. Gibbes, 20 How. 535. Circumstances which imply a contract between the parties to give a particular lien, and especially fraud practiced by the true owner of the property upon the nominal and bona fide owner, will incite the conscience of a court of equity to do justice between the parties. It is the province of such a court, under those and other like circumstances, to rectify a proposed wrong, to compel the parties to carry into effect their implied agreements, or to prevent one from asserting against another a defense which is both inequitable and unjust.

The question upon this appeal is whether the facts of the case can bring it within the remedial control of a court which is governed by the principles of equity. In the statement which has been given of the petitioner's case, as presented by them, one important fact was omitted, which is that the guaranties were given upon an express contract for security upon the freights, which has proved beneficial to the petitioners to the extent of about $25,000. The effect which this fact has upon the claim of the petitioners that a maritime lien upon the vessels ought to supplement an express agreement for a maritime lien upon the freights has already been considered in the maritime

lien cases, and the result of this case has been foreshadowed. It would seem to be manifest that if the petitioners had taken, as their security, an express pledge of personal property, not maritime in its character, they could not, in the event of loss, resort to an unpledged maritime security. Neither can they, having taken one kind of maritime security which has not proved sufficient, turn to another, which it cannot be found was offered by the owner. It is, however, urged by the petitioners, that Huntington signed the second and became liable upon the third guaranty, upon the supposition, belief, or expectation that he was to have security upon the American ships, and paid his money in reliance upon that expectation, and that this fact brings him and his associate within the boundary of equitable liens. It is said that as in Perry v. Board, supra, the complainant advanced his money upon the expectation of a mortgage, so Huntington paid his money in reliance upon a lien upon the vessels. The difference between the case at bar and the well-established cases of equitable liens, of the class of which the Perry Case is an example, is that in the latter the equitable lienors had a just right to expect the security of the estate, whereas Huntington had no just right to rely upon the vessels, because he had made an express contract which limited his lien, and in view of that contract his expectations had no adequate or firm foundation.

The decree of the district court is affirmed, with costs.